IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                                                    Case No. 3:16cr121

MIQUEL MILLER,

      Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Miquel Miller's Motion for

Compassionate Release Pursuant to the First Step Act of 2018 (the "Motion"). (ECF No. 31.)

Miller seeks compassionate release pursuant to the First Step Act because he has chronic asthma

and claims that it places him at higher risk for serious illness or death from COVID-19. (*Id.* 1.)

The United States responded in opposition, (the "Opposition"), (Opp'n, ECF No. 38), and Miller

replied, (the "Reply"), (Reply, ECF No. 39). The matter is ripe for disposition. The Court

dispenses with oral argument because the materials before it adequately present the facts and

legal contentions, and argument would not aid the decisional process. For the reasons that

follow, the Court will deny the Motion.

## I. Background

On September 21, 2016, a grand jury in the Eastern District of Virginia indicted Miquel

Miller on one count of distributing cocaine base, in violation of Title 21, U.SC. §§ 841(a)(1) and

(b)(1)(C). (ECF No. 9.) On November 16, 2016, Miller entered into a written Plea Agreement,

and agreed to plead guilty to the criminal charge. (ECF No. 13.) The Statement of Facts further

explained that on four separate occasions, law enforcement agents "utilized individuals secretly

working for the police ('cooperators') to arrange the purchase of cocaine base from Miller." (*See* Statement of Facts ¶¶ 1–4, ECF No. 14.)

The Presentence Report ("PSR") calculated a Total Offense Level of 21, a Criminal History Category of V, and a Sentencing Guidelines range of seventy to eighty-seven months of imprisonment and at least three years of supervised release. (PSR 16, ECF No. 15.) In calculating his Criminal History Category, the PSR indicated that Miller had three juvenile adjudications and eight adult criminal convictions. (PSR ¶¶ 25–36.) Of his eight adult convictions, two were violent in nature: (1) Assault and Battery and Malicious Wounding, which he committed on August 11, 2013; and, (2) Assault and Battery against Officer Daniel A. Culley, which he committed on March 8, 2014 (*Id.* ¶¶ 33, 34.) At the time of his sentencing in 2017, Miller reported that his "overall health [was] good; however, he does suffer from asthma and uses an Albuterol inhaler when needed." (*Id.* ¶ 52.) He also reported a "history of alcohol and marijuana use." (*Id.* ¶ 55.)

The Court sentenced Miller to seventy months' imprisonment, at the bottom of the Sentencing Guidelines range, followed by three years of supervised release. (J. 2–3, ECF No. 22.) As of July 2020, Miller has served approximately forty-one (41) months, or nearly sixty percent (60%), of his seventy-month sentence. (*Id.* 1–2.)

On June 6, 2020, Miller filed his Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] (ECF No. 31.) In his Motion, Miller asserts that his "underlying

---

[1] 18 U.S.C. § 3582(c) reads, in relevant part:

The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or *upon motion of the defendant after the defendant has fully exhausted all administrative right to appeal a failure of the Bureau of Prisons* to bring a motion on the defendant's behalf or the lapse of [thirty] days from the receipt of such a request by the

health condition of chronic asthma in light of the global COVID-19 pandemic" constitutes an

"extraordinary and compelling reason" that justifies his compassionate release. (Mot. 1.) Miller

currently resides at FCI Schuylkill in Minersville, Pennsylvania. (*Id.* 2.) Miller contends that he

"is particularly susceptible to COVID-19" because of his asthma. (*Id.* 1.) He further asserts that

"[t]he virus thrives in densely packed populations" and that Schuylkill "is ill-equipped to contain

the pandemic." (*Id.* 2.)

Miller urges that because he has asthma, allowing him "to live with his grandmother at

her home in Farmville, Virginia is the only prudent and just response to the extraordinary and

compelling circumstances" that the COVID-19 pandemic poses. (*Id.*) He states that he "is not a

danger to the community." (*Id.*) If released, he would "help care for his aging grandmother" and

work to "provide for his . . . family." (*Id.*) Miller points to other instances of inmates

contracting and dying from COVID-19 while incarcerated.[2]

Because of his asthma, Miller claims that "if [he] is not released, he faces a potential

death sentence." (*Id.*) He points out that "numbers [of COVID-19 cases] are growing every

day" and that "[t]he nation's prison system is particularly ill-equipped to handle the spread of a

disease as contagious and deadly as COVID-19." (*Id.* 8.) The "crowded and confined nature of

---

warden of the defendant's facility, whichever is earlier, may reduce the term of
imprisonment . . . after considering the factors set forth in section 3553(a) to the extent
that they are applicable, if it finds that—
    (i) extraordinary and compelling reasons warrant such a reduction . . . and that
    such a reduction is consistent w applicable policy statements issued by the
    Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

[2] Miller, for instance, discusses the unfortunate death of Andre Williams, who received a
commuted life sentence but contracted and died from COVID-19 before his release went through
the filing system. (*Id.* 3.)

a detention facility" means that the spread of COVID-19 within these facilities "is far outpacing" its spread elsewhere.[3] (*Id.* 9.) Because of this "alarming spread," Miller alleges that the "BOP cannot safeguard prisoners." (*Id.* 10.) Furthermore, in light of these confined conditions, inmates "cannot provide self-care" because such conditions "prevent[] them from following CDC guidance." (*Id.* 11.) Miller points to other cases that "have found extraordinary and compelling circumstances to release a defendant who suffered from asthma" in light of the COVID-19 pandemic. (*Id.* 12–13 (citing *United States v. Brown*, 2:18cr360 (N.D. Ala. May 22, 2020)); *United States v. Gorai*, No. 2:18cr220, 2020 WL 1975372 (D. Nev. Apr. 24, 2020).

The United States opposes his motion and avers that the BOP has taken significant steps to combat COVID-19. The United States contends that, unlike the BOP, "courts are not well positioned to evaluate a range of quickly-changing facts" surrounding COVID-19 responses.[4] (Opp'n 6.) The United States further asserts that Miller's asthma does not constitute an "extraordinary and compelling reason" meriting compassionate release, because he "is stable and has no medical restrictions," and does not establish how he "is more likely to contract the disease [in Schuylkill] than he would if released to live with his elderly grandmother." (*Id.* 13.) Finally, the United States claims that Miller has failed to propose an adequate release plan and has demonstrated recidivist tendencies in the past and in prison. (*Id.* 15.) For these reasons, the United States requests that the Court deny Miller's Motion. (*Id.* 16.)

---

[3] Miller points out that "two top hotspots" of COVID-19 activity are both prisons: Marion Correctional Institution and Pickaway Correctional Institution. (*Id.* 9.)

[4] These facts include the safety of home detention, avoiding recidivism, and protecting the larger public from infection. (Opp'n 6.)

## II. The COVID-19 Pandemic Has Led Inmates to Seek
## Compassionate Release from Prison to Avoid Serious Illness or Death

In March 2020, the World Health Organization declared COVID-19 a worldwide

pandemic. WORLD HEALTH ORGANIZATION, "Timeline of WHO's response to COVID-19,"

https://www.who.int/news-room/detail/29-06-2020-covidtimeline (last visited July 24, 2020). In

light of the COVID-19 outbreak within the federal prison system, incarcerated individuals,

including Miller, began petitioning courts around for compassionate release under the First Step

Act, citing individual risk factors as they relate to COVID-19. (*See* Mot. 3–4.)

The Bureau of Prisons ("BOP") has confirmed positive COVID-19 test results for 10,748

federal inmates nationwide. BUREAU OF PRISONS, "COVID-19 Cases,"

https://www.bop.gov/coronavirus/ (last visited Aug. 5, 2020). While 8,663 inmates and 720 staff

members have recovered, 108 inmates and 1 staff member have died as a result of COVID-19

disease. (*Id.*)

Relevant to the Motion at bar, Miller is serving his sentence at FCI Schuylkill, in

Minersville, Pennsylvania. (*Id.* 1.) According to the Bureau of Prisons, Schuylkill has one

inmate who recently tested positive for COVID-19. BUREAU OF PRISONS, "Covid-19 cases,"

https://www.bop.gov/coronavirus/ (last visited Aug. 5, 2020). No inmates or staff at Schuylkill

have died from COVID-19. *Id.*

### III. Legal Standard

In 2018, Congress enacted the First Step Act to, *inter alia*, provide incarcerated

individuals the opportunity to directly petition the courts for compassionate release under 18

U.S.C. § 3582(c)(1)(A). Before Congress passed the First Step Act in 2018, only the Bureau of

Prisons had the authority to petition courts for sentence modifications on compassionate release

grounds. *Coleman v. United States*, No. 4:17cr69, 2020 WL 3039123, at *1 (E.D. Va. June 4,

2020). Following enactment of the First Step Act, criminal defendants may move courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the statutory sentencing factors set forth in 18 U.S.C. § 3553(a), and evaluate any evidence of rehabilitation or other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 398 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)).

### A.   Exhaustion of Administrative Remedies

Before the Court may reach the merits of a defendant's motion, it must find either: (1) that the defendant has fully exhausted his or her administrative remedies; or, (2) waive that requirement. *United States v. Jones*, No. 3:11cr249-MHL, ECF No. 47, at *2 (citing *Washington v. Bureau of Prisons*, No. 1:19cv1066, 2019 WL 6255786, at *2 (N.D. Ohio July 3, 2019)). A motion for compassionate release can be brought by either: (1) the Bureau of Prisons; or, (2) the defendant, after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Generally, a court "may waive the exhaustion requirement where pursuing an administrative remedy would be futile . . . [,] if 'exhaustion via the agency review process would result in inadequate relief[,]' or [if] 'pursuit of agency review would subject the petition to undue prejudice.'" *United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (internal citations omitted). Furthermore, in light of the COVID-19 pandemic, many courts "have waived the exhaustion requirement . . . in the wake of the COVID-19 outbreak."

*United States v. Feiling*, No. 3:19cr112, 2020 WL 1821457, at *4 (E.D. Va. Apr. 10, 2020); *see also Coleman*, 2020 WL 3039123, at *2 ("[i]t is clear that the exhaustion requirement should not be treated as a jurisdictional bar or a mandatory claim processing rule when considering the context of the COVID-19 pandemic").

### B.   Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, § 3582(c)(1)(A) permits a court to modify a defendant's sentence when "extraordinary and compelling reasons" warrant such action, after additional consideration of "the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable."[5]  18 U.S.C. § 3582(c)(1)(A); *see also White*, 2020 WL 3442171, at *4.

Prior to the passage of the First Step Act, the United States Sentencing Commission ("Sentencing Commission") defined "extraordinary and compelling reasons" in United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13.[6]  *Porter-Eley v. United States*, No.

---

[5] The highly discretionary process of adjudicating these motions sees courts varying widely in their application of the statutory language, even within the same district. *Compare United States v. White*, No. 3:18cr61, 2020 WL 3442171, at *3 (E.D. Va. June 23, 2020) (declining to waive the exhaustion of administrative remedies requirement) *with Poulios*, 2020 WL 1922775, at *3 (waiving the exhaustion requirement).  Until the district courts receive "the inevitable interpretation of the terms of § 3582(c) by a higher court," the process will likely remain discretionary. *White*, 2020 WL 3442171, at *4.

[6] Section 1B1.13 of the United States Sentencing Guidelines provides in relevant part:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1)(A) Extraordinary and compelling reasons warrant the reduction; or (B) [T]he defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

4:16cr89, 2020 WL 3803030, at *2 (E.D. Va. July 6, 2020). The Sentencing Commission noted that extraordinary and compelling reasons exist under certain circumstances concerning the medical condition, age, and family circumstances of the defendant. U.S.S.G. § 1B1.13 cmt. 1 (U.S. SENTENCING COMM'N 2018). The Sentencing Commission also provided that there may be "extraordinary and compelling reason[s] other than, or in combination with," those reasons specifically listed therein. *Id.* Since the passage of the First Step Act, however, the Sentencing Commission has not updated Guidelines Manual § 1B1.13. In any event, the policies contained in § 1B1.13, while helpful guidance, do not bind the Court when considering a sentence reduction consistent with the statutory mandates of 18 U.S.C. § 3582(c)(1)(A). *Porter-Eley*, 2020 WL 3803030, at *2.

In the context of COVID-19, courts nationwide have recognized that "where a defendant can show both a particularized susceptibility and a particularized risk of contracting the coronavirus, they may grant motions for compassionate release based upon a defendant's medical conditions." *White*, 2020 WL 3442171, at *4; *see also Feiling*, 2020 WL 1821457, at *7. Generally, courts have found that the defendant cannot rely merely on "a fear of contracting COVID-19" as grounds for compassionate release. *White*, 2020 WL 3442171, at *5.

---

(2) [T]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) [T]he reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

## IV.  Analysis

**A.**   **Miller Fulfilled the Exhaustion Requirement Because the Warden Denied His Request for Compassionate Release and He Filed His Operative Motion More than Thirty Days After Filing with the Warden**

At the outset, the Court finds that Miller sufficiently exhausted his administrative remedies prior to filing his Motion for Compassionate Release in federal court.

On April 8, 2020, Miller filed a "Compassionate Release/Reduction in Sentence" request to Warden Scott Finley. (Letter Mot. 2, ECF No. 25.) Two days later, on April 10, 2020, Warden Finley denied Miller's request, stating that Miller's "medical history [did] not meet the criteria . . . for inmates with 'Medical Conditions.'" (*Id.*) On May 4, 2020, Miller wrote his Letter Motion to the Eastern District of Virginia, requesting that he be granted "a [sic] early release because . . . [he] fit[s] the criteria" due to his asthma. (*Id.* 1.) One month later, on June 6, 2020, he filed his operative Motion via the Federal Public Defender's Office. (Mot.)  Because Miller filed the operative Motion more than thirty days after filing for compassionate release with Warden Finley, the Court finds that Miller satisfied the exhaustion requirement.  The Court now turns to the merits of Miller's Motion.

According to the United States' Response in Opposition to Miller's Motion, Miller has fifteen months left to serve on his sentence, and a projected release date of September 30, 2021. (Opp'n 13.)

**B.**   **Miller Does Not Present Extraordinary and Compelling Reasons Justifying His Compassionate Release**

After due consideration, the Court finds that the Motion does not set forth an extraordinary and compelling reason that warrants compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).

9

Miller cannot rely merely on "a fear of contracting COVID-19" as grounds for compassionate release. *White*, 2020 WL 3442171, at *5. Miller states that he suffers from "chronic asthma," which the PSR corroborates. (PSR ¶ 52.) However, Miller does not submit any medical records establishing that he has been hospitalized for, or suffered any other adverse effects from, his asthma. In his rejection of Miller's Request for Compassionate Release, Warden Finley noted Miller's ability to "perform self-maintenance activities in a correctional environment." (Letter Mot. 2.) Based on the record before the Court, it does not appear that Miller has unmanageable asthma sufficient to justify a finding of extraordinary and compelling circumstances for compassionate release. *See generally Porter-Eley*, 2020 WL 3803030 (holding that an asthmatic inmate who petitioned for compassionate release on COVID-19 related grounds had not established that her asthma had led to hospitalizations or other severe complications, and therefore that her asthma was not a compelling and extraordinary reason to grant her request); *see also* Danny Hakim, *Asthma is Absent Among Top Covid-19 Risk Factors, Early Data Shows*, N.Y. TIMES (Apr. 20, 2020) (exploring the top Covid-19 comorbidities, with admittedly minimal data, and finding that health experts have "generally seen little to no evidence that asthma increases the risk of developing Covid-19," particularly in younger patients), https://www.nytimes.com/2020/04/16/health/coronavirus-asthma-risk.html.

In Opposition to Miller's Motion for Compassionate Release, the United States points to several precautionary measures that the BOP has enacted since the COVID-19 pandemic began. These include requiring quarantine for at least fourteen days, limiting inmates' movement among facilities, providing and strongly encouraging the use of face coverings, and restricting access to BOP facilities. (Opp'n 4–5.) Miller refutes the success of these actions in his Reply, arguing that the climbing numbers of positive COVID-19 tests among inmates and prison staff

throughout the BOP "do not reflect successful containment of the virus." (Reply 4.) He further

claims that the BOP refuses to test all inmates "because the BOP knows [] it will find[] a serious

problem." (*Id.*) But Miller's discussion of prison conditions focuses primarily on the entire

BOP system rather than FCI Schuylkill, which has reported only one case of COVID-19 since

the United States filed their Opposition. (*Id.*) Accordingly, the Court does not find on the record

before it that extraordinary and compelling circumstances exist in this case that warrant

compassionate release.

C.      **Evaluating Miller's Request in Light of the 18 U.S.C. § 3553(a) Factors Does Not Support Granting Miller's Motion**

Even if Miller presented extraordinary and compelling reasons for this Court to consider

granting him compassionate release, the Court must also consider the 18 U.S.C. § 3553(a)

sentencing factors, including public safety. In doing so, the Court finds that denying the Motion

adheres to its mandate to impose a sufficient, but not greater than necessary, sentence.

First, the United States asserts in its Opposition that since his incarceration, Miller has

"failed out of the Residential Drug Abuse Program ('RDAP')." (Opp'n 15.) Additionally, the

record shows that while Miller has experienced substance abuse problems in the past, he has

failed to complete substance abuse assessments and counseling that were contingencies of his

prior probation. (PSR ¶ 34.) Taking steps toward rehabilitation while in prison often

demonstrates that an inmate no longer poses a threat to society, and weighs in favor of their

receiving consideration for early release. *See, e.g.*, *Martin*, 916 F.3d at 396–97 (vacating and

remanding a district court opinion for failing to take inmate's rehabilitation steps, including

obtaining a GED, tutoring other inmates, and exhibiting "exemplary behavior," into account

when considering her motion for a sentence reduction); *see also Robinson*, 2020 WL 4041436,

at *6 (finding that an inmate who exhibited "significant rehabilitation since the imposition of his

11

sentence" by completing the BOP's RDAP and investing in his own and his peers' treatment qualified for compassionate release). The record does not make clear whether Miller has experienced rehabilitation during his time at FCI Schuylkill, nor does it indicate that his substance abuse problems would not continue upon his release.

Second, the record reflects that court orders have not prevented Miller from committing further crimes. Miller committed the current underlying federal offense while on probation for assaulting a law enforcement agent, a crime violent in nature. (PSR ¶ 38.) The United States also notes that during Miller's four-year "term of incarceration, [he] has 7 disciplinary incidents, including a high-level violation that was considered threatening."[7] (Opp'n 15.) Miller committed his most recent infraction on March 31, 2020. (*Id.*) Although Miller proposes supervised release conditions in his Reply,[8] he does not identify a plan for, or otherwise address, his previous failings to follow court orders. Given the need for a sentence to "promote respect for the law . . . provide adequate deterrence to criminal conduct . . . [, and] to protect the public from future crimes of the defendant," the Court does not find compassionate release appropriate in this case. 18 U.S.C. §§ 3553(A)–(C). Miller's criminal history, BOP records, and seeming inability to follow court orders, combined with the fact that his proposed release plan does not

---

[7] According to the Incident Reports attached to the United States' Opposition, Miller's incidents include insolence to a staff member, (Opp'n Exs. 3, 6, 9), unexcused absence from work or assignment/refusing to work, (*Id.* Exs. 4, 5, 6, 9), and refusing to obey orders, (*Id.* Exs. 6, 7, 8). The "high-level violation that was considered threatening," (Opp'n 15), involved Miller telling a staff member "'[l]et's see what happens if you put your hands on me' in a threatening manner." (Opp'n Ex. 7, 2.)

[8] Miller proposes that: (1) he abide by standard supervised release conditions; (2) he contact the U.S. Probation Office for specific reporting instructions within seventy-two hours of release; and, (3) he be confined to his grandmother's home unless he is attending activities approved by the U.S. Probation Office. (Reply 14.)

include any plan for ensuring that he will follow such orders and rules if granted release,[9] show

that Miller has not done enough to establish that he will not be a danger to society if released.

## IV. Conclusion

In sum, the Court will deny the Motion for Compassionate Release. (ECF No. 31.)

An appropriate Order shall issue.

M. Hannah Lauck
United States District Judge

---

[9] Additionally, while Miller states that he plans to live with his grandmother in Farmville, the United States points out that Miller has not provided "information about his grandmother's physical condition, the accommodations at his grandmother's house and who else lives at his Grandmother's house." (Opp'n 14.)  Miller also avers that one of his children has a condition that makes them more susceptible to COVID-19, but claims that his wife can provide transportation for him without addressing how this will impact his child. (Mot. 15.)  Overall, Miller "fails to provide any proposed plan to safeguard his health or the health of the individuals with whom he would reside." (Opp'n 14.)